2-3-1701 Sarah Esteban-Garcia v. Merrick B. Garland Have you made any argument to us... or did you make an argument to the BIA, that the I.J. had failed to consider evidence that it was obliged to consider? ...which is did you make an argument that there was legal error by the I.J. in not addressing evidence that bore on the question? I believe that that was referenced in Petitioner's open brief. The issue as to the particular social group was raised with the board. Okay. Thank you, Counsel. At this time, if Counsel for the Respondent would please introduce herself on the record to begin. Good morning, Your Honor. May it please the Court, Nancy Pham... Nancy Pham for the United States Attorney General. This case is about Petitioner and her boyfriend, her then-boyfriend, Tito, who she shared this intimate relationship with. It's a case about money, opportunity, and personal relationship. That was what was motivating Tito. And the government would like to point out that Tito is from the local rural area that Petitioner comes from. He is also indigenous. And because of this relationship with Petitioner, that they were boyfriend and girlfriend, the motivation behind his actions were essentially opportunity and this personal relationship. Now, turning to what the Court seems particularly interested in, whether there was a proper mixed motive analysis, the government's position here is that the immigration judge acknowledged the possibility of a mixed motive but did not apply it because the record did not support it. The record is replete with information and support that what Tito was motivated by was money. Does it make a difference if you said Tito was her boyfriend or the record says they dated on a few occasions? Does it make a difference if he dated, let's say, seven, eight, nine, ten times versus he just met her and told her to do the same exact things? It would make a difference? I think I'm understanding your question, Your Honor. It does make a difference that there's numerous mentions that the motivation for Tito to recruit Petitioner into prostitution was money. During her credible fear interview, the asylum officer actually gave Petitioner ample opportunity to express if there were alternate motivations and every single time her response, her own response, was that Tito and his associates were motivated by money. The asylum officer asked her, did they say why they wanted you to enter into prostitution instead of someone else? She answered, no, all they said is that they wanted the money for women to be able to sell their bodies and make money that way. The asylum officer also asked her, why did these men think they could take you and sell you? And she mentions this dating relationship with Tito. And I understood that all they wanted to do was make easy money. The asylum officer also asked her, was your being indigenous a reason why they wanted to do prostitution? She said, I don't know. But they kept saying that they get women to do this, that's their business and it's their job. It's their business. The motivation here, the record is replete, is money. There's no mixed motive analysis needed because it wasn't appropriate under the record. And Petitioner has discussed sort of country condition reports, a UNICEF report, and while general evidence of what is going on in Guatemala might have some relevance, it doesn't have relevance to the particular motivation at play here, which is Tito and the associates that interacted with Petitioner. And government would just like to highlight on that point, this court's precedent in Mayorga Vidal V. Holder, even if a persecutor is shown to prey upon vulnerable persons,  that doesn't establish a protected ground. So in a sense, if this person happens to be from a vulnerable community, that doesn't matter if that's not actually the reason that the actor targeted the individual. And here we have nothing in the record that shows that Tito targeted Petitioner because of her indigenous status. Everything else from his words, the Petitioner's words, even an affidavit from Petitioner's own cousin indicates that what was driving Tito and his associates was money. So the government would advance that. The mixed motive analysis is completely not applicable here, and that the immigration judge looked at the record and made that determination correctly. And just to point out, the immigration judge's opinion, she did mention the Petitioner's indigenous status, that in the Petitioner's testimony before the immigration judge, that she had faced discrimination, had been called an Indian, and so forth. So the immigration judge on the record and in the written opinion is acknowledging that she considered this indigenous status and whether it was applicable to this case. And again, the record points the opposite way, which is that Tito and his associates were motivated by money, and if anything, targeted Petitioner simply because she was his girlfriend that he had a personal relationship with, and came from the same rural community. So on that point, Petitioner has not established that the harm she suffered was on account of a protected ground. Now under the past persecution claim, there's two additional prongs that Petitioner must establish in order to prevail. And the government's position there is that substantial evidence does not support Petitioner's claim. The first of the alternate elements is that Petitioner failed to demonstrate that she suffered harm rising to the level of persecution. Just so I'm following, I think Petitioner starting the argument on the nexus point, if I'm following, there's a certain logic to that, because if there was no nexus shown in the past, it's hard to see how there's a reason to disturb the finding of no nexus with respect to the future, given there's no evidence after she left, anything that would indicate a particular motivation to target her for her being on account of her protected group, beyond what was already in the record from before when she left. If that's right, then case is over on that ground alone. Is that right? Yes. Yes, Your Honor. We were just pointing out the alternate prongs should the court disagree that Petitioner sufficiently, that the evidence compels the conclusion that there was a protected ground. But the government would advance that, based on the record, that there's no indication that Tito targeted Petitioner for her indigenous status, that the only motivation was money, which she repeats over and over, numerous times in the record. Let me ask you, the purported psychological harm, that does not change the result, correct? In the government's opinion? No, Your Honor. While psychological harm can be a factor in determining whether the harm suffered rises to the level of persecution, psychological harm alone is not sufficient. In this case, we're talking about one incident where, after approximately a month of dating, Tito approached Petitioner, asked her to essentially participate in prostitution or selling drugs on his behalf so that he could gain the money that she earned from those activities. Petitioner refused. Tito grabbed her arm and then grabbed her, I apologize, pulls her hair, and before the immigration judge, Petitioner testified that he started to touch her breasts. So we're talking about one incident, and that just falls short of what is required to demonstrate persecution. That wouldn't be true as the evidence of future persecution. In other words, at least what's alleged she feared being subject to was being sex trafficked. Does the government have a view as to whether that would rise to the level of persecution if it was supported? So by the act of sex trafficking, Your Honor, could it rise to the level of persecution? Because that's what she's claiming she fears would happen to her if she returned. She's not saying, I fear the same thing happening, that one incident's happening, and that's it. She's saying she fears if she comes back, what they're going to do is make her a victim of sex trafficking. And I think she's saying that rises to the level of persecution. I don't understand the government to be disagreeing with that, or am I wrong? Does the government actually take a position on that? I thought your position was that the record does not compel finding that she would be sex trafficked. Right. The government's position is that, based on that one incident, there's not compelling evidence that she would be sex trafficked. And then, particularly, not just that, but that she would be sex trafficked on account of it. Well, I understand the nexus point, for sure. I'm just trying to understand if the government's taking a position one way or the other on the claimed persecution that she fears in the future as to whether that rises to the level. I understand your argument about why there's not evidence of past persecution because the incident doesn't rise to the level. Right. The government's position is that it's a case-by-case analysis, so sex trafficking being quite serious could arise. But we just don't have that issue here because there's no nexus. Right. Yes, Your Honor. We don't have that issue here. We don't even reach that determination. Thank you. Thank you, Counsel. At this time, the Counsel for the Petitioner will reintroduce himself on the record to begin. Two-minute rebuttal. For the Petitioner, in relation to the holding for past persecution, the threat of sex trafficking was accompanied by threats of physical violence. So in that assessment, the Court is compelled to analyze these threats. Was there significant actual suffering or harm that resulted from these threats? Yes, a diagnosis of post-traumatic stress disorder and major depressive disorder. From those notes, she suffers from nightmares, anxiety, muscle tension, as well as fear. So that supports a finding of past persecution. Were these threats accompanied by physical violence? Well, certainly not overwhelming physical violence. They included pulling her hair, grabbing her arm to the point that she was left with bruises, as well as engaging in an act of sexual violence, in groping her. What about her cousin after she had left her? Tito, I think, showed up at her cousin's, continued asking for her. Does that help your case, make it even stronger? I think in relation to the well-founded fear of future persecution, the fact that he is continuing his efforts to locate her, to make her engage in forced trafficking, yes. And I would also note that the Court needs to take into account that the only reason the single incident ended is because petitioner acquiesced to the demands. Fearing for her safety, she agreed, yes, I'll do this. And the record also shows that afterwards, she immediately set up her flight from Guatemala, fearing that this would occur. And that was well-founded, because within days, Tito calls her, saying, are you ready to do this? Are you ready to engage this? He sends his associates to seek her out, even after her flight. So that not only supports the severity and imminency of the threats that were lodged, supporting a finding of past persecution, but also supports the objective reasonability of her fear of future persecution. And finally, if I may make one final point on the nexus. In her credible fear interview, while she did know that there were financial motivations which do not preclude a finding of nexus, she did note, I believe the question was, do you fear, what do you fear as an indigenous woman? Her response was, if I'm indigenous and they can make me a prostitute. She also notes how they don't respect me. They say indigenous are worthless and they want me to feel less. Well, there's not overwhelming direct evidence of the motivation. It's well-supported in the record from the practice of targeting vulnerable women like her, particularly in incidents where they feign romantic relationships to coerce them into sex traffic. Thank you.